**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| THOMAS A. BAHRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:12-cv-1473-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ADT SECURITY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion for summary judgment brought by defendant ADT Security Services, Inc. ("ADT"). For the reasons that follow, the court grants in part and denies in part ADT's motion.

## I.  BACKGROUND

On April 26, 2012, plaintiff Thomas Bahringer filed a civil complaint against ADT in the Court of Common Pleas for Charleston County. ADT removed the action to this court on June 4, 2012, on the basis of diversity jurisdiction. ADT moved to dismiss Bahringer's complaint on June 11, 2012, and Bahringer amended his complaint shortly thereafter. Bahringer's amended complaint alleges four causes of action against ADT: negligence, breach of contract, unfair trade practices under the South Carolina Unfair Trade Practices Act ("SCUTPA"), and intentional infliction of emotional distress. Am. Compl. ¶¶ 14-31. All of Bahringer's claims relate to a house fire that went undetected by ADT, his alarm services provider. Id. ¶¶ 6-8.

Bahringer is significantly handicapped and is confined to a wheelchair. Id. ¶ 4. On or around April 2, 2010, Bahringer purchased a security system and monitoring services from ADT. Id. At the time of purchase, Bahringer signed an alarm services

1

contract with ADT's authorized dealer, Securewatch.  Id.; Def.'s Mot. for J. on the Pleadings Ex. A.  On July 9, 2011, Bahringer's home was partially destroyed by a fire. Am. Compl. ¶ 6.  Bahringer was rescued by neighbors, but suffered smoke inhalation injuries that required "two weeks of hospitalization and treatment."  Id. ¶ 7.  Bahringer alleges that his ADT-monitored smoke detectors failed to alert either him or ADT to the fire; indeed, ADT was unaware of the fire until Bahringer notified them after the fact.  Id. ¶¶ 6-8.  ADT did not receive any signals from the smoke detectors in Bahringer's house on the night of the fire.  Def.'s Reply in Support of Mot. for Summ. J. Exs. B, C, D.

ADT timely answered the amended complaint.  On October 26, 2012, ADT moved for motion for judgment on the pleadings.  Because the parties referenced important documents that were not attached to the pleadings, the court converted the motion into one for summary judgment and allowed time for additional briefing.  ADT filed the instant motion for summary judgment on February 4, 2013, and Bahringer opposed the motion on February 18, 2013.  A hearing was held on March 27, 2013, and the matter is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary

judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

### III.  DISCUSSION

ADT contends that judgment must be granted in its favor on all four causes of action included in the amended complaint.

### A.  First Cause of Action – Negligence

ADT argues that Bahringer's negligence claim must fail because ADT did not owe Bahringer any duty independent of the duties owed under the alarm services contract. Bahringer counters that a special relationship existed between the parties – and therefore an extra-contractual duty was owed – because he is a wheelchair-bound double amputee. At the very least, Bahringer argues, whether such a special relationship exists is a factual question that must be resolved at trial.

As an initial matter, the court notes that the question of whether a special relationship existed between Bahringer and ADT is not a factual one. The parties agree that Bahringer is paraplegic, and that he contracted with ADT for its alarm services. What must be determined is whether ADT's obligations to Bahringer constitute a "special relationship" under South Carolina law. That is a legal question reserved for the court.

Generally, under South Carolina law,

> [A] negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action.

3

Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995).  Examples of such special relationships include those between design professionals and general contractors who work under their supervision, id. at 89 (contractors could maintain negligence action against engineer who supervised them), between lawyers and their clients, Lloyd v. Walters, 277 S.E.2d 888, 889 (S.C. 1981) (corporation could maintain negligence action against lawyer who had a professional duty to protect its interests), and between corporate consultants and a state agency that is the subject of a report prepared by those consultants.  S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 326 (S.C. 1986) (state agency could maintain negligence action against corporate consultant when the consultant "undertakes to objectively analyze and compare the attributes of commercial competitors for the purpose of giving one a market advantage over the other").  "A buyer-seller relationship does not constitute a 'special relationship . . . .'"  Laidlaw Envtl. Servs. v. Honeywell, Inc., 966 F. Supp. 1401, 1414 (D.S.C. 1996), aff'd,113 F.3d 1232 (4th Cir. 1997).

      In the examples above, the South Carolina Supreme Court has found a special relationship where the parties' relationship was one marked by professional duty, as in Lloyd or Booz-Allen & Hamilton, or by supervisor-supervisee relations, as in Tommy L. Griffin Plumbing.  Bahringer's relationship with ADT does not fit into either of these categories.  Moreover, other courts that have considered the issue have determined that a tort claim does not lie where an alarm services provider owes a contractual duty to monitor a plaintiff's premises.  See, e.g., Spengler v. ADT Sec. Servs., Inc., 505 F.3d 456, 458 (6th Cir. 2007) (negligence claim for failure to properly dispatch an ambulance failed where the parties' relationship was governed by contract); Vigilant Ins. Co. v. ADT

Sec. Servs., Inc., No. 10-cv-3066, 2011 WL 855874, at *2-3 (S.D.N.Y. Mar. 9, 2011) (negligence claim for alarm system's failure to detect a fire failed because parties' relationship was governed by a contract).

The amended complaint alleges that ADT acted negligently by installing an alarm system that did not function properly, improperly installing and monitoring the alarm system, and failing to take proper action at the first sign that a fire had started in Mr. Bahringer's home. These allegations are all thinly veiled breach of contract claims which cannot stand as a separate negligence claim. See Seebaldt v. First Fed. Sav. & Loan Ass'n, 239 S.E.2d 726, 727 (S.C. 1977) ("Bare allegations of negligence cannot convert a breach of contract action into an action in tort."); Koontz v. Thomas, 511 S.E.2d 407, 412 (S.C. Ct. App. 1999) ("[Plaintiff's] tort allegations are merely veiled breach of contract claims and . . . cannot be maintained as a separate cause of action.").

Bahringer has not explained how or why ADT's duties to him may be any different than they would be to an able-bodied customer. Because the court finds that no special relationship existed between the parties, Bahringer's negligence claim fails.

### B. Second Cause of Action – Breach of Contract

ADT contends that it did not breach its alarm services contract with Bahringer and that any relief offered to Bahringer must be capped by the liability limitations included in the contract.

The parties have not offered explanations as to how and why Bahringer's alarm system malfunctioned. As a result, questions of material fact persist as to whether ADT breached the alarm services contract with Bahringer and summary judgment is inappropriate. However, the contract clearly limits ADT's liability for any breach that it

may have committed, and the court holds that ADT's liability is limited to $500, the amount identified in the alarm services contract.

South Carolina courts have generally upheld exculpatory contracts. However, contracts that seek to exculpate a party from liability for its own negligence are strictly construed against the party relying thereon. McCune v. Myrtle Beach Indoor Shooting Range, Inc., 612 S.E.2d 462, 465 (S.C. Ct. App. 2005) (citing Pride v. S. Bell Tel. & Tel. Co., 138 S.E.2d 155, 157 (S.C. 1964)). "An exculpatory clause will never be construed to exempt a party from liability for his own negligence 'in the absence of explicit language clearly indicating that such was the intent of the parties.'" McCune, 612 S.E.2d at 465 (quoting S.C. Elec. & Gas Co. v. Combustion Eng'g, Inc., 322 S.E.2d 453, 458 (S.C. Ct. App. 1984)). While exculpatory clauses are strictly construed against the party relying thereon, courts around the country have nevertheless upheld provisions of contracts that limit the liability of alarm services providers. See, e.g., Jeannie's Jewelers, Inc. v. ADT Sec. Servs., Inc., No. 12-cv-0265, 2012 WL 1860319, at *5 (E.D. Va. May 22, 2012) (citing Gill v. Rollins Protective Servs. Co., 722 F.2d 55, 58-59 (4th Cir. 1983)); Leon's Bakery, Inc. v. Grinnell Corp., 990 F.2d 44, 48 (2d Cir. 1993) (collecting cases).

The ADT alarm services contract that Bahringer signed includes an exculpatory clause that states:

> 6. . . . YOU AGREE THAT WE . . . ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES (INCLUDING INTERNET/WEBSITE SERVICES) WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. IF IT IS DETERMINED THAT WE . . . ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL

> BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT.  THESE AGREED UPON DAMAGES . . . ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.  AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU.  YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AMENDMENT.

Def.'s Mot. for Summ. J. Ex. A, ¶ 6 (capitalization in original, font size not to scale).  A paragraph entitled EXCLUSIVE DAMAGES REMEDY immediately follows.  It states: "YOUR EXCLUSIVE DAMAGE AND LIABILITY REMEDIES ARE SET FORTH IN PARAGRAPH 6 ABOVE.  WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES."  Id. ¶ 7 (capitalization in original, font size not to scale).

The exculpatory clause is clearly worded and appears in all capital letters.  The court finds that the exculpatory clause clearly limits ADT's liability and demonstrates that such limitation was the intent of the parties.  To hold otherwise would be to ignore the teachings of South Carolina courts.  See, e.g., Gladden v. Boykin, --- S.E.2d ---, 2013 WL 1223848, at *3 (S.C. Mar. 27, 2013) (noting that "the proper test is whether an important clause was particularly inconspicuous, as if the drafter intended to obscure the term," and determining that a clause whose heading was printed in capital letters was not inconspicuous); Wachovia Bank v. Blackburn, 716 S.E.2d 454, 458 (S.C. Ct. App. 2011) (finding that waivers printed in stand-alone paragraphs with all capital letters and bold

7

headings are conspicuous and unambiguous).[1]  Bahringer's argument that the exculpatory clause is unenforceable because it was printed in small font is unavailing.  Furthermore, Bahringer's decision not to read the contract, Pl.'s Opp'n to Def.'s Mot. for Summ. J. 8, does not invalidate it.  See Sims v. Tyler, 281 S.E.2d 229, 230 (S.C. 1981) ("One who is capable of reading and understanding but fails to read a contract before signing is bound by the terms thereof."); Blackburn, 716 S.E.2d at 458 ("A person signing a document is responsible for reading the document and making sure of its contents.  Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.") (quoting Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003)).

The alarm services contract plainly limits ADT's liability to the greater of $500 or 10% of its annual service charges,[2] even if the damages were caused ADT's negligence, failure to perform contractual duties, or other fault.  Even if, as Bahringer alleges, ADT's monitoring system or personnel failed in some way, such a failure falls within the scope of the contract's exculpatory clause.[3]

---

[1] Bahringer invites the court to find that a limitation of liability provision is unenforceable when it is written in 4-point font, or to certify the following question to the South Carolina Supreme Court: "Whether, where the text of a contract is of a consistent size, there is a minimum size the text must be for limitation-of-liability clauses in consumer contracts peddled door-to-door in residential neighborhoods to be enforceable?"  Letter from B. Fudenberg, Apr. 23, 2013, ECF No. 51.  Because the law is clear, the court declines to so find or to so certify a question.

[2] Bahringer paid $41.99/month to ADT under the alarm services contract, or $503.88 annually. Def.'s Mot. Ex. A.  Because 10% of his annual service payments would be $50.39, the largest sum that Bahringer can recover under the contract is $500.

[3] In several paragraphs, the contract describes in detail the limitation of ADT's liability, as well as the possible flaws in ADT's monitoring systems.

> YOU ARE AWARE OF THE FOLLOWING: NO ALARM SYSTEM CAN GUARANTEE PREVENTION OF LOSS; HUMAN ERROR IS ALWAYS POSSIBLE; WE MAY NOT RECEIVE ALARM SIGNALS IF THE

While he appears to concede that the public interest is not implicated in this case, Bahringer suggests that ADT cannot limit its liability for negligence via the alarm services contract because the parties were not on roughly equal bargaining terms. Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings 2; Pl.'s Opp'n to Def.'s Mot. for Summ. J. 3. He notes that:

> [C]onsiderations of public policy prohibit a party from protecting himself by contract against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty, or when the parties are not on roughly equal bargaining terms.

---

TELEPHONE LINE OR OTHER ALARM TRANSMISSION SYSTEM IS CUT, INTERFERED WITH, OR OTHERWISE DAMAGED OR IF TELEPHONE OR ELECTRICAL SERVICE IS UNAVAILABLE FOR ANY REASON.

. . . .

5. . . . WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. . . .

. . . .

20. SMOKE DETECTOR AND OTHER WARNINGS. Our . . . SMOKE DETECTORS WILL NOT OPERATE, THE ALARM WILL NOT SOUND, AND THE ALARM SIGNAL WILL NOT BE TRANSMITTED, IF THE ELECTRICITY IS CUT OFF AND THE BACKUP BATTERY, IF PART OF THE SYSTEM, IS LOW OR DEAD. If there is any fire, the electricity may cut off before the alarm can function and the alarm will not sound, and the alarm signal will not be transmitted. . . . WE RECOMMEND THAT YOU INSTALL A BATTERY POWERED SMOKE DETECTOR AS A BACKUP SYSTEM. YOU SHOULD REGULARLY INSPECT YOUR SMOKE DETECTORS . . . . WE WARN YOU THAT A SMOKE DETECTOR WILL NOT ENSURE THAT YOU WILL NEVER SUFFER DAMAGE OR INJURY.

Def.'s Mot. Ex. A (capitalization in original, font size not to scale).

9

Pride, 138 S.E.2d at 157.

Nothing in the record supports Bahringer's contention that the parties bargained on unequal footing. Bahringer was under no obligation to obtain fire and theft monitoring. Once he chose to obtain alarm services, he could have done so through any security services company that serves the Charleston area. ADT was not his only choice. Finally, Bahringer has never suggested that his cognitive abilities are limited in any way that would have made it difficult for him to read and understand the contract. For these reasons, the court finds that the parties in this case were on roughly equal footing. See Gladden, 2013 WL 1223848, at *3 (finding that a home inspector and a home buyer had roughly equal bargaining power, where there was no allegation that the home buyer lacked the education to understand the terms of a contract, and where the record did not support a finding that home inspection contracts without exculpatory clauses are unavailable in the market).

For the foregoing reasons, summary judgment is inappropriate with respect to Bahringer's breach of contract claim. However, the court finds that ADT's liability is limited by the express terms of the alarm services contract to $500.

### C. Third Cause of Action – Violation of the South Carolina Unfair Trade Practices Act

ADT also contends that Bahringer's SCUPTA claim must fail because ADT has done nothing more than honor the terms of its agreement. Bahringer responds that ADT employs deceptive advertising that states that the company notifies the fire department "[a]s soon as an ADT fire or smoke detector signals an alarm." Am. Compl. ¶ 5. He contends that the discrepancy between ADT's advertising and the terms of ADT's agreement constitutes a deceptive practice.

A plaintiff seeking to maintain an unfair trade practices claim under SCUTPA must establish:

> (1) the defendant engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice; and (3) the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.

Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 579 (D.S.C. 2003), aff'd, 115 F. App'x 636 (4th Cir. 2004). Unlawful trade practices are "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade." S.C. Code Ann. § 39-5-20(a) (2012). Unfair trade practices are practices which are "offensive to public policy or which are immoral, unethical, or oppressive . . . while a deceptive practice is one which has a tendency to deceive." Smith v. Chase Bank & Mortg., No. 10-cv-0882, 2011 WL 939288, at *6 (D.S.C. Jan. 13, 2011) (internal quotations omitted), report and recommendation adopted by 2011 WL 938409 (D.S.C. Mar. 16, 2011). A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition. Haley Nursery Co. v. Forrest, 381 S.E.2d 906, 908 (S.C. 1989); Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 350-51 (S.C. Ct. App. 1986). The potential for repetition is generally demonstrated in one of two ways: "(1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." Wright v. Craft, 640 S.E.2d 486, 502 (S.C. Ct. App. 2006). SCUTPA relief is "not available to redress a private wrong where the public interest is unaffected." Columbia E. Assoc. v. Bi-Lo, Inc., 386 S.E.2d 259, 263 (S.C. Ct. App.

1989). Even "a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the Unfair Trade Practices Act." Id.

The ADT marketing materials that Bahringer identifies are not, in fact, misleading. They neither promise to insure customers against all damages nor suggest that ADT accepts unlimited liability for customers' losses. The guarantees listed on ADT's website do not relate to fire protection services, and the company's Home Security Systems web page does not suggest that its fire alarm systems are infallible. The language on that page focuses on what happens once a fire or smoke alarm has been triggered, not how reliably the alarms are triggered.

Furthermore, Bahringer's SCUTPA claim fails because he has not demonstrated that ADT has engaged in an unlawful trade practice. Even assuming that ADT regularly limits its liability to $500 in its alarm services contracts, such a limitation of liability is not an unfair or deceptive act. The alarm services contract clearly limits its liability and states that ADT is not an insurer of its customer's property. The contract also repeatedly states that no fire alarm system is 100% effective and that the alarm system may fail during a fire. Neither the alarm services contract nor ADT's advertisements guarantee that ADT's fire alarm systems will always work and will always prevent loss.

For these reasons, the court grants summary judgment in favor of ADT on Bahringer's SCUTPA claim.

### D. Fourth Cause of Action – Intentional Infliction of Emotional Distress

Finally, ADT seeks judgment in its favor on the intentional infliction of emotional distress cause of action, arguing that Bahringer has failed to show that ADT acted in any way that would support such a claim. The amended complaint alleges that Bahringer suffered severe emotional distress during the time that he was trapped in his burning

12

home. Am. Compl. ¶ 31. Bahringer also contends that he suffered emotional distress when ADT repeatedly attempted "to force Plaintiff to make his contracted-for payments" after the fire occurred. Pl.'s Opp'n to Mot. for Summ. J. 8.

In order to recover for intentional infliction of emotional distress, Bahringer must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
>
> (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;"
>
> (3) the actions of the defendant caused plaintiff's emotional distress; and
>
> (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it."

Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 70-71 (S.C. 2007) (quoting Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).

Bahringer surely suffered severe emotional distress while trapped inside his burning home. However, even when all facts are construed in Bahringer's favor, he has not demonstrated the first three elements of an intentional infliction of emotional distress claim. He has not alleged facts that demonstrate that ADT caused the fire or that ADT intentionally and recklessly ignored distress signals from his house. Insofar as Bahringer alleges that ADT inflicted emotional distress on him through their attempts to obtain monthly payments after the fire, the repeated phone calls of which Bahringer complains do not rise to the level of "extreme and outrageous conduct" contemplated by an intentional infliction of emotional distress claim. Furthermore, the parties agree that ADT stopped contacting Bahringer after he terminated his service agreement in writing,

13

per the terms of the contract. As a result, Bahringer has also failed to show that ADT's actions caused his severe emotional distress.

In short, Bahringer's intentional infliction of emotional distress claim cannot survive summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** ADT's motion for summary judgment, ECF No. 43. The court **DENIES** summary judgment with respect to Bahringer's second cause of action, his breach of contract claim, and **GRANTS** summary judgment in favor of ADT on all other causes of action contained in the amended complaint. Though the court denies summary judgment as to the breach of contract claim, it **HOLDS** that ADT's liability for any breach would be limited to $500, per the terms of the alarm services agreement signed by both parties.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 29, 2013**
**Charleston, South Carolina**

14